2002 WY 104

**WYOMING RESOURCES CORPORATION, a South Dakota corporation, Appellant (Plaintiff),**

v.

**T–CHAIR LAND COMPANY, a Wyoming limited partnership, Appellee (Defendant).**

No. 00–333.

Supreme Court of Wyoming.

July 10, 2002.

Randall T. Cox, Gillette, Wyoming, Representing Appellant.

Haultain E. Corbett and Thomas J. Klepperich of Lonabaugh and Riggs, Sheridan,

Wyoming, Representing Appellee. Argument by Mr. Corbett.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1]   Appellant Wyoming Resources Corporation (WRC) and Appellee T–Chair Land Company (T–Chair) entered into contractual agreements providing WRC access to oil and coalbed methane production wells by roads on T–Chair's ranch property. A dispute arose after T–Chair contended that improperly controlled water produced from WRC's coalbed methane production wells was damaging the surface of its ranch property. When WRC began to operate more wells without resolving this dispute, T–Chair blocked WRC's access to the roads on its property, denying WRC access to its wells. Wyoming statute permits a gas production company to obtain an access easement through a condemnation action when necessary. After determining that WRC had access by contract, the district court decided that the easement was not necessary and dismissed the condemnation action. The primary issue in this appeal is the meaning of the statutory language, "the property sought to be acquired is necessary for the project," found in Wyo. Stat. Ann. § 1–26–504(a)(iii) (LexisNexis 2001). Addressing the limited question whether contractual rights preclude condemnation proceedings, we hold that the district court's conclusion on this question is in error as a matter of law and reverse its determination. The issue of public use and necessity has many components, and because the trial court did not determine those issues or others as required under W.R.C.P. 71.1, we reverse and remand for further proceedings.

## ISSUES

[¶ 2]   WRC presents the following issues for our review:

I.   Whether the district court erred as a matter of law by dismissing the plaintiff's complaint and motion to file a supplemental complaint

A.   Whether the district court disregarded settled case law and statutory provisions regarding necessity for easements when it held that the plaintiff failed to prove necessity

B.   Whether the district court erred in forcing the plaintiff to make an election of remedies

II.   Whether the district court erred by permitting the defendant to deny that the plaintiff needs an easement when the defendant has repeatedly refused to permit the plaintiff to use the road

T–Chair rephrases the issues as follows:

A.   Was there sufficient evidence to support the trial court's finding that Plaintiff/Appellant had a contractual right of access to Defendant/Appellee's lands?

B.   Is the trial court's determination that Plaintiff/Appellant failed to meet its burden of demonstrating that condemnation was "necessary" clearly erroneous?

C.   Did the trial court correctly rule that Plaintiff/Appellant may not invoke condemnation proceedings to avoid the obligations contained in existing contracts between it and Defendant/Appellee?

## FACTS

[¶ 3]   T–Chair Land Company is the owner of a family ranch in southern Campbell County, Wyoming. WRC filed an amended complaint for condemnation seeking to condemn a right-of-way, thirty feet in width, for access across T–Chair's lands for the purpose of operating oil and gas exploration, drilling, production and transportation facilities and related improvements. The district court found that WRC operates and owns interests in existing oil wells on lands owned by T–Chair and on lands adjacent to the ranch that are accessed by roads on T–Chair land. WRC plans to drill additional oil and coalbed methane wells and conduct additional development of both types of wells on T–Chair lands and on lands adjacent to the ranch that are accessed by crossing the ranch's lands. At the time that WRC acquired operating rights in ten existing oil wells located with the T–Chair Ranch, these ten oil wells were subject to eleven annually renewable access

agreements between the parties. Under these existing access agreements, WRC paid T–Chair $22,400 in 1999 for access to ten oil wells by fifteen miles of private roadway.

[¶ 4] On June 26, 1999, WRC and T–Chair executed a surface use agreement for additional access and surface use rights for the purpose of developing coalbed methane gas and oil wells on the T–Chair Ranch. T–Chair claims that the surface use agreement required WRC to prevent produced coalbed methane water from overflowing the existing Brown Reservoir. WRC made initial payments under this agreement and drilled eight coalbed methane wells on T–Chair Ranch. On December 7, 1999, T–Chair notified WRC that it had breached the agreement by the unauthorized discharge of produced water and demanded that WRC honor its contractual commitment to curtail the water production; however, WRC had not curtailed it as of September 7, 2000. In March of 2000, T–Chair learned that WRC planned to drill fourteen additional coalbed methane wells on the ranch, and, at that time, T–Chair prevented access. The parties disputed whether T–Chair suspended access pending remedy of the default or terminated the access agreement.

[¶ 5] On June 14, 2000, WRC filed a complaint in condemnation and sought to condemn a road it already accessed pursuant to the eleven oil well access agreements between the parties. As required by statute, WRC offered to purchase the easement it sought to condemn. It proposed a one-time payment of $6,000 although at the time it was contractually obligated to pay $22,400 for the year.

[¶ 6] The district court determined that T–Chair had suspended, not terminated, access and WRC had not established necessity for condemnation as required by Wyoming's Eminent Domain Act because it had existing contractual access to T–Chair lands. The district court dismissed the complaint, and this appeal followed.

1. § 1–26–814. Right of eminent domain granted; petroleum or other pipeline companies; pur-

## STANDARD OF REVIEW

[¶ 7] Eminent domain proceedings are authorized by constitutional and statutory provisions and governed by W.R.C.P. 71.1. The district court determines all issues arising on the complaint for condemnation including notice, the plaintiff's right to make the appropriation, plaintiff's inability to agree with the owner, the necessity for the appropriation, and the regularity of the proceedings. W.R.C.P. 71.1(e)(2)(A). Only the issue of compensation may be tried before a jury. W.R.C.P. 71.1(j).

[¶ 8] When we review the district court's determination of issues required by Rule 71.1(e)(2), "we uphold the judgment if there is evidence to support it, and in doing so we look only to the evidence submitted by the prevailing party and give to it every favorable inference which may be drawn therefrom, without considering any contrary evidence." *Town of Wheatland v. Bellis Farms, Inc.*, 806 P.2d 281, 284 (Wyo.1991). Where the district court's ultimate conclusions decide questions of law, we afford no deference to its decision. *See Coronado Oil Co. v. Grieves*, 603 P.2d 406, 410 (Wyo.1979); *see also Homesite Co. v. Board of County Comm'rs of Laramie*, 69 Wyo. 236, 240 P.2d 885, 889 (1952).

## DISCUSSION

[¶ 9] Article 1, Section 32 of the Wyoming Constitution provides:

Private property shall not be taken for private use unless by the consent of the owner, except for private ways of necessity ... nor in any case without due compensation.

Eminent domain is the State's right and power to appropriate private property to promote the general welfare. *Coronado Oil Co.*, 603 P.2d at 410. The Wyoming Eminent Domain Act is set forth in Wyo. Stat. Ann. § 1–26–501 through § 1–26–817. Wyo. Stat. Ann. § 1–26–502(a)(vi) (LexisNexis 2001). The right of eminent domain is extended to gas production companies by Wyo. Stat. Ann. §§ 1–26–814 and 815 (LexisNexis 2001)[1] for

poses.

acquisition of easements. We have previously recognized that the obvious purpose of the constitutional and statutory provisions is to provide a means whereby a landowner or owner of an interest in lands, enclosed on all sides by lands of others and unable to get to the land from a public road or highway, can get relief by condemning a right of way to it across intervening land. *Coronado Oil Co.*, 603 P.2d at 410.[2] *Coronado Oil Co.* concluded that the legislature intended that the interests of a federal oil and gas lessee were sufficient to permit the lessee to condemn private property to obtain a right-of-way to its oil and gas leases. *Id.* at 410–11. The

> Whenever any utility or any petroleum or other pipeline company, authorized to do business in this state, has not acquired by gift or purchase any land, real estate or claim required for the construction, maintenance and operation of their facilities and appurtenances or which may be affected by any operation connected with the construction or maintenance of the same, the utility or company has the right of eminent domain and may condemn the easement required by the utility or company.

§ 1–26–815. Right of eminent domain granted; ways of necessity for authorized businesses; purposes; extent.

> (a) Any person, association, company or corporation authorized to do business in this state may appropriate by condemnation a way of necessity over, across or on so much of the lands or real property of others as necessary for the location, construction, maintenance and use of reservoirs, drains, flumes, ditches including return flow and wastewater ditches, underground water pipelines, pumping stations and other necessary appurtenances, canals, electric power transmission lines, railroad trackage, sidings, spur tracks, tramways, roads or mine truck haul roads required in the course of their business for agricultural, mining, exploration drilling and production of oil and gas, milling, electric power transmission and distribution, domestic, municipal or sanitary purposes, or for the transportation of coal from any coal mine or railroad line or for the transportation of oil and gas from any well.
> (b) The right of condemnation may be exercised for the purpose of:
> (i) Acquiring, enlarging or relocating ways of necessity; and
> (ii) Acquiring easements or rights-of-way over adjacent lands sufficient to enable the owner of the way of necessity to construct, repair, maintain and use the structures, roads or facilities for which the way of necessity is acquired.
> (c) A way of necessity acquired hereunder shall not exceed one hundred (100) feet in width on each side of the outer sides or mar-

Wyoming Constitution recognizes the proposition that the uses there outlined while serving a private purpose indirectly benefit the general public. "A private use is by constitutional edict given the force and effect of a public use." *Id.* at 410 (citing *Grover Irrigation & Land Co. v. Lovella Ditch, Reservoir & Irrigation Co.*, 21 Wyo., 204, 131 P. 43 (1913)). This Court has previously decided that the eminent domain statutes provide a separate and distinct remedy from the private road application process. *Id.* at 412.

[¶ 10] In an eminent domain proceeding, the district court reviews the condemnor's

> ginal lines of the reservoir, drain, ditch, underground water pipeline, canal, flume, power transmission line, railroad trackage, siding or tramway unless a greater width is necessary for excavation, embankment or deposit of waste from excavation. In no case may the area appropriated exceed that actually necessary for the purpose of use for which a way of necessity is authorized.

2. "Our decision in the second *Coronado* case, [*Coronado Oil Co. v. Grieves*,] 642 P.2d 423 [(Wyo.1982)], did not consider the expanded range of compensation factors that the legislature recognized in adopting the Act. Pursuant to the provisions of the Act, the landowner whose property is the subject of a partial taking is entitled to prove not only the difference between the fair market value of the property prior to the taking and the fair market value of the remainder after the taking, under the 'before and after rule,' but he also is entitled to prove the value of the property rights taken. The measure of compensation is the greater of those alternative amounts. Section 1–26–702(b), W.S.1977. The landowner may prove the fair market value of the property taken by any method of valuation that is just and equitable if there is no relevant market establishing the value. Section 1–26–704(a)(ii), W.S. 1977. In § 1–26–706(a)(i), the legislature provided that the fair market value of the remainder should reflect increases or decreases in value caused by the proposed project including 'impairment of the use of [the landowner's] other property caused by the condemnation' and, in the following subsection (ii), provision is made for 'increase in damage to [the landowner's] property by the general public which could reasonably be expected to occur as a result of the proposed actions of the condemnor; * * *.' The effect of this statutory scheme is to permit the landowner to establish the appropriate amount of just compensation for a partial taking by any rational method so long as he is able to introduce competent evidence to that end." *L.U. Sheep Co. v. Board of County Comm'rs of County of Hot Springs*, 790 P.2d 663, 671–72 (Wyo.1990).

actions vis-a-vis the three statutory requirements found in Wyo. Stat. Ann. § 1–26–504(a). *Bellis Farms, Inc.*, 806 P.2d at 281. That statute provides:

§ 1–26–504. Requirements to exercise eminent domain.

(a) Except as otherwise provided by law, the power of eminent domain may be exercised to acquire property for a proposed use only if all of the following are established:

(i) The public interest and necessity require the project or the use of eminent domain is authorized by the Wyoming Constitution;

(ii) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury; and

(iii) The property sought to be acquired is necessary for the project.

Wyo. Stat. Ann. § 1–26–504(a) (LexisNexis 2001).

[¶ 11]   The district court ruled that WRC could not demonstrate necessity for condemnation as required by statute because it had access pursuant to its existing agreements. A number of other jurisdictions have decided that, unless precluded by statute, the existence of a lease agreement between property owners does not preclude an action for eminent domain if necessary to protect property interests or maintain facilities and improvement. *Bear Creek Development Corp. v. Dyer*, 790 P.2d 897, 898 (Colo.App.1990)(citing cases).   Generally, however, these decisions were made where condemnors sought the fee simple title to the property, facts showed that the necessity was permanent, and the public could not reasonably require expensive and permanent buildings to be constructed on the land in which the petitioner had only a limited interest by virtue of a lease agreement.   *Central Hanover Bank &*

*Trust v. Pan American Airways*, 137 Fla. 808, 188 So. 820, 824–25 (1939) (discussing cases).

[¶ 12]   By statute, the Wyoming legislature has given the condemnor discretion to acquire property either by purchase, contract, or eminent domain proceedings, Wyo. Stat. Ann. § 1–26–503,[3] and we conclude that by this language alone the eminent domain act does not preclude a condemnation action although an access agreement exists between the parties.   Although WRC is not seeking a fee simple title to property, but rather an easement;   its necessity is not permanent because it holds a leased property interest presumably of limited duration;   and nothing in the record shows that expensive and permanent buildings have been constructed which would cause the property owners' objection to condemnation to be unreasonable, we nevertheless hold that a different rationale exists permitting WRC to acquire its easement by eminent domain proceedings.

[¶ 13]   The taking of private property for a private way of necessity is recognized as valid in Wyoming because "[t]here is a public interest in giving access by individuals to the road and highway network of the state as a part and an extension thereof for economic reasons and the development of land as a resource for the common good, whether residential or otherwise."   *Hulse v. First American Title Co. of Crook County*, 2001 WY 95, ¶ 30, 33 P.3d 122, ¶ 30 (Wyo. 2001).   "[T]he right to condemn a way of necessity under constitutional and statutory provisions is an expression of public policy against landlocking property and rendering it useless."   *Id.; see Coronado Oil Co.*, 603 P.2d at 410.

[¶ 14]   The legislature has enacted the eminent domain and private road establishment acts so that access will be available to

**3.**   Wyo. Stat. Ann. § 1–26–503 (LexisNexis 2001) provides:

(a) Nothing in this act requires that the power of eminent domain be exercised to acquire property.   Whether property necessary for public use is to be acquired by purchase, other means or by eminent domain is a decision left to the discretion of the person authorized to acquire the property.

(b) Subject to any other statute relating to the acquisition of property, any person or public entity authorized to acquire property for a particular use by eminent domain may also acquire the property for the use by grant, purchase, lease, gift, devise, contract or other means.

permit mineral estate owners to realize the full benefit of their property ownership and landlocked property will not be rendered useless. The dismissal is reversed and remanded for further proceedings required pursuant to W.R.C.P. 71.1. In addition to further judicial review of necessity, those proceedings should include judicial review of whether WRC has complied with the requirements of Wyo. Stat. Ann. §§ 1–26–509 and 510 (Lexis-Nexis 2001). Those statutes provide:

§ 1–26–509. Negotiations; scope of efforts to purchase.

(a) A condemnor shall make reasonable and diligent efforts to acquire property by good faith negotiation.

(b) In attempting to acquire the property by purchase under W.S. 1–26–510, the condemnor, acting within the scope of its powers and to the extent not otherwise forbidden by law, may negotiate and contract with respect to:

(i) Any element of valuation or damages recognized by law as relevant to the amount of just compensation payable for the property;

(ii) The extent or nature of the property interest to be acquired;

(iii) The quantity, location or boundary of the property;

(iv) The acquisition, removal, relocation or disposition of improvements upon the property and of personal property not sought to be taken;

(v) The date of proposed entry and physical dispossession;

(vi) The time and method of payment of agreed compensation or other amounts authorized by law; and

(vii) Any other terms or conditions deemed appropriate by either of the parties.

§ 1–26–510. Preliminary efforts to purchase.

(a) Except as provided in W.S. 1–26–511, an action to condemn property may not be maintained over timely objection by the condemnee unless the condemnor made a good faith effort to acquire the property by purchase before commencing the action.

(b) Negotiations conducted in substantial compliance with W.S. 1–26–509(b)(i) through (vi) are prima facie evidence of "good faith" under subsection (a) of this section.

Reversed and remanded for further proceedings in accordance with W.R.C.P. 71.1.